UNITED STATES of America, Plaintiff-Appellee,

v.

William T. BURNS, Defendant-Appellant.

No. 81–3133

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Feb. 26, 1982.

Frank G. DeSalvo, New Orleans, La., for defendant-appellant.

Michael Schatzow, Harry W. McSherry, Asst. U.S. Attys., New Orleans, La., for plaintiff-appellee.

Before CLARK, Chief Judge, RANDALL and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellant, William T. Burns, was found guilty of one count of conspiracy to distribute cocaine and three counts of possession with intent to distribute cocaine. A major government witness at Burns' trial was Robert Lee Collins. It was his testimony that he had twice travelled to Miami, Florida, with Burns to purchase cocaine from a supplier, Kenneth Linn. He further testified that he travelled two months later with another person, James Worthy, to purchase cocaine on behalf of defendant Burns. His testimony was to the effect that after returning with the cocaine he had delivered it to Burns. Finally, Collins testified he made arrangements by telephone with Linn in Miami for Burns to pay a $5,000 brokerage fee to Collins so that Burns could buy cocaine directly from Linn without going through Collins.

All of this testimony was part of a plea bargain by Collins with the government. Collins was killed four days after the conclusion of the trial when a bomb exploded in his pickup truck.

Burns makes two contentions in this appeal. First, he urges error in the district court overruling a motion for a new trial based upon newly discovered evidence. The newly discovered evidence was that Collins had received psychiatric treatment. Burns urges that the government had had at least a hint of such knowledge but had not pursued it and had not turned such knowledge over to the defense. Second, Burns urges that in two different ways the government prosecutor in closing argument alluded to the fact that Burns had not testified in his own defense.

*Adequacy of Notice of Appeal*

The court notes on its own motion a preliminary question as to whether Burns has properly raised the newly discovered evidence issue on this appeal. Logically, this question is the matter for first consideration.

Defendant was convicted on March 4, 1981. He filed a timely notice of appeal. But after this notice, on April 7, 1981, he moved for a new trial on the ground of newly discovered evidence. The motion was denied by the district court on June 25, 1981, after a hearing. No second notice of appeal was filed after the denial of the motion for a new trial. The result is that Burns' appeal urging that the district court was in error in overruling the motion for a new trial on the ground of newly discovered evidence has never been made the subject of an appeal notice.

This procedural posture raises two problems. The first is brought about by the wording of Rule 33 of Fed.R.Crim.P. which provides in part: "A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case." Deci-

sions of this court have read the rule literally and have held that the district court does have jurisdiction to *entertain* such a motion and *deny* it while an appeal is pending. The rule is read to forbid only the *granting* of such a motion while the appeal is pending. *United States v. Parker*, 586 F.2d 422, 435 (5th Cir. 1978); *United States v. Fuentes-Lozano*, 580 F.2d 724, 725 (5th Cir. 1978). We read these cases as settling the law. The district court did have the authority to *deny* the motion for a new trial based upon newly discovered evidence pursuant to Fed.R.Crim.P. Rule 33.

▆▆▆ The more serious question is whether a second notice of appeal was required in order for Burns to assert error in the denial of his motion for a new trial. The government does not urge that the appeal be denied on the issue of newly discovered evidence in this case. But if this were a jurisdictional matter, of course, the parties could not waive it. It is established in this circuit that timely notice of appeal is not jurisdictional but is a "prerequisite to the exercise of jurisdiction." *Sanchez v. Bd. of Regents*, 625 F.2d 521, 522 n.1 (5th Cir. 1980). There was, of course, a timely notice of appeal in this case. The only issue is whether the later action of the district court also had to be noticed specifically for appeal. This Court dealt with that issue as demanding only brief attention in *United States v. Hersh*, 415 F.2d 835, 837 (5th Cir. 1969). In that case the government moved to dismiss the appeal on the ground the appellant had not filed a second notice of appeal from the denial of his motion for a new trial based upon newly discovered evidence. We denied the motion to dismiss without elaboration, but we indicated that appellant's timely brief which dealt with the denial of his motion for a new trial could serve as a substitute for a second notice of appeal. We have such a brief in this case also.

Also lending support to the conclusion that a second notice of appeal is not a prerequisite to the appeal in the principal case is our earlier decision in *Richardson v. United States*, 360 F.2d 366, 369 (5th Cir.

1966). In that case the Court found a second notice of appeal was not necessary. It based its decision in part, however, upon the fact that the defendant had asserted some of the same grounds in his direct appeal as he had asserted in his motion for a new trial. The Court labeled his motion "hybrid" and held the appeal was properly before the Court. It is accurate to say that the principal case is not hybrid in the same sense since Burns could not have asserted the attack upon the credibility of Collins on direct appeal because no record existed at trial on the issue. The record on that issue was developed solely at the post-trial hearing.

The critical point to be distilled from these cases is that the second notice of appeal is literally a "notice" requirement. Without a showing of prejudice against the government, it would be unreasonable and unfair to refuse to consider an issue which was thoroughly briefed and clearly recognized as an issue by both parties growing out of the criminal trial and its aftermath. Fed.R.App.P. Rule 4(a) is explicit in requiring a second notice of appeal in civil cases if the post-trial motion is one affecting the finality of the judgment. But it is to be noted from this rule, applicable only to civil cases, that only in this one circumstance is a second notice of appeal stated as being required. While it may be desirable for a second notice of appeal to be filed, we must conclude that there is no requirement in the law that this be done to perfect an appeal. The *Hersh* case states the law of this circuit, and this law is in accordance with the fair and just administration of the laws when no prejudice is shown. *See also* 9 J. Moore Federal Practice ¶ 204.14 (2d ed. 1980). Appellant was not directed either by Criminal Rule 33 or Appellate Rule 4 to file a second notice of appeal after the denial of the motion for a new trial. We hold that the issue of the correctness of the district court's ruling denying the motion for a new trial on the basis of newly discovered evidence is properly before the Court.

### The Motion for a New Trial

Defendant's motion for a new trial urged that since the trial he had learned that the

government's main witness, Robert Lee Collins, had received treatment from a psychiatrist and that this information was or should have been known by the prosecutor. The defendant did not disclose how he had learned of this information even though the defense counsel in his opening statement had said that the defendant knew witness Collins.

The facts as developed at the district court hearing on this motion for a new trial show that Burns made a pre-trial discovery request for any and all medical records and information concerning "any confidential informants" including any records which would indicate "alcohol or drug related problems." In response to this request even though Collins was not a confidential informant, the prosecutor asked witness Collins whether he had ever seen a psychiatrist. Collins responded that he had been in group transactional analysis. When asked if the group therapy was for drug or alcoholic problems, Collins responded that it was not—that it was for Collins' own personal problems. He did not state that he had consulted a psychiatrist.

■ As a preliminary matter it should be pointed out that defendant's motion for a new trial was deficient on its face under the criteria set out in *United States v. Rodriguez*, 437 F.2d 940, 941 (5th Cir. 1971). *Rodriguez* lays out the requirements to be met to obtain a trial on the basis of newly discovered evidence: (1) the evidence must be discovered following the trial, (2) facts must be alleged from which the court may infer diligence on the part of the movant to discover the evidence, (3) the evidence must not be merely cumulative nor impeaching, (4) the evidence must be material, and (5) the evidence must be such that a new trial would probably produce a new result. The two deficiencies in defendant's motion were that it did not allege facts about his diligence in his discovering the evidence and also he did not respond to the seemingly overt circumstance that the evidence was merely impeaching.

■ The district court, however, did not deny the motion on these grounds. It held

a hearing and made its decision on the merits. We shall review its decision on the merits. The challenge on the merits is based upon the *Brady* rule which finds a violation of due process of law in the suppression of material evidence by a prosecutor. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In establishing a *Brady* violation, the defendant must prove: (1) the prosecution suppressed evidence, (2) the suppressed evidence was favorable to the defense, and (3) the suppressed evidence was material to the defense. *Sellers v. Estelle*, 651 F.2d 1074, 1076 (5th Cir. 1981).

■ It is defendant Burns' contention that Collins' response that he had been in group therapy for personal problems not connected with drugs or alcohol should have prompted further inquiry by the government. But *Brady* does not place such an additional obligation on the government. This Court held in *United States v. Walker*, 559 F.2d 365, 373 (5th Cir. 1977):

[W]hile *Brady* requires the Government to tender to the defense all exculpatory evidence in its possession, it establishes no obligation on the Government to *seek out* such evidence.

While we have also held that the prosecutor cannot compartmentalize his information by not inquiring of the "prosecutorial team", *e.g., United States v. Auten*, 632 F.2d 478 (5th Cir. 1980), this information was not known by anyone in the prosecutorial team. Burns thus fails to meet the first requirement of the *Brady* rule that the government suppressed evidence which it had.

The defendant's claim also fails to meet the second prong of the *Brady* rule which requires the evidence to be favorable to the defense. At the district court hearing the testimony was from two doctors, one a psychiatrist who had treated Collins and one a clinical psychologist who had tested him. Their testimony established that Collins' psychological problems were at most impeachment evidence and did not affect his competence to testify. Collins was diagnosed as a "schizoid personality", not a psy-

chotic, not a schizophrenic. The clinical psychologist specifically testified that Collins was fully in touch with reality, that his personality problems did not affect his ability to tell the truth, and that such a personality disorder is not characterized by "eccentricities of speech, behavior, or thought."

We held in *United States v. Partin*, 493 F.2d 750 (5th Cir. 1974), that evidence of insanity or mental derangement is admissible for credibility purposes. But this case is not comparable to *Partin* or to such cases as *Powell v. Wiman*, 287 F.2d 275 (5th Cir. 1961), relied upon by defendant, in which proof of psychosis was present. There was no such proof in this case in the undisputed testimony of the medical experts. There is no substantial support, therefore, for the second requisite finding in the *Brady* doctrine that the evidence is exculpatory.

Burns also fails to establish the third prong of a *Brady* violation, the requirement that the evidence be material. At the conclusion of the thorough hearing given by the district court, the court concluded that if the defense had been in possession of the information developed with respect to Mr. Collins' personality difficulties, the court would have refused to permit the defendant to introduce the evidence in any event. The court said that his seeking of psychiatric help had had nothing to do with any condition which had any bearing on his grasp on reality or his character as it related to truthfulness or untruthfulness.

This determination that the evidence as it was developed at the hearing was inadmissible in any event is supported by the language of Fed.R.Evid. 608(b), which gives the trial court discretion to allow cross-examination of a witness concerning specific instances of conduct to attack or support credibility only if probative of truthfulness or untruthfulness. Additional support for this conclusion comes from Fed.R.Evid. 403, which permits the trial judge to exclude evidence " . . . if its probative value is substantially outweighed by the danger of unfair prejudice. . . . "

As impeachment evidence only, the standard applicable to the materiality of evidence under the *Brady* rule is an evaluation of whether the evidence "probably would have resulted in an acquittal." *United States v. Mesa*, 660 F.2d 1070, 1077 (5th Cir. 1981); *U.S. v. Martino*, 648 F.2d 367, at 407.

Finally, in evaluating the issue of newly discovered evidence concerning Collins, it is of significance that the government's case was strong even without Collins' testimony. Another witness testified as a matter of personal knowledge and participation to: (1) overheard conversations between defendant Burns and Collins concerning the cocaine conspiracy, (2) a telephone call the witness made to defendant Burns about a discrepancy in the quantity of cocaine delivered to Burns by Collins, (3) a telephone call which Collins received in which the Miami supplier reported that Burns was trying to purchase cocaine from him and in which a commission was discussed, and (4) a meeting in which Burns came to Collins to pick up a refund because Collins had not delivered cocaine for which Burns had paid. Other witnesses linked defendant Burns to the cocaine supplier through telephone toll records and credit bureau records. There is no reason to conclude that the jury verdict would have been affected by the knowledge of the psychiatric counselling which Collins had received.

■ We find no abuse of discretion in the district court denying the motion for a new trial on the basis of newly discovered evidence.

### *Prosecutorial Argument*

■ Appellant urges that in two separate statements the prosecutor in closing argument commented by implication on his failure to testify. No objection was lodged as to these remarks at the time they were made so this contention is reviewable only as "plain error" pursuant to Fed.R.Civ.P. 52(b), *United States v. Okenfuss*, 632 F.2d 483, 485 (5th Cir. 1980).

The first of the two statements complained of arose in a context in which the prosecutor first said: "[L]et's go back to those opening statements that I made and

Mr. DeSalvo (defense counsel) made." The prosecutor then went on to say:

> ... Mr. DeSalvo says that he admits thank [sic] Mr. Burns associated with individuals who were cocaine dealers. He associated with Mr. Linn. He associated with Mr. Collins. But he doesn't explain anything about these associations. Why they associated together.

> Now he readily admits that Mr. Burns lied about these phone reservations, gave the fictitious name, but he doesn't tell you why he lied about those plane reservations on July 17th and July 30th.

The prosecutor in terms was referring to statements made by defense counsel in opening and not to defendant's failure to testify, although at a bench conference the judge admonished the prosecutor that he was near the borderline on commenting upon the failure to testify and told him not to go further. These comments were not " 'of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.' " *United States v. White*, 444 F.2d 1274, 1278 (5th Cir.), *cert. denied*, 404 U.S. 949, 92 S.Ct. 300, 30 L.Ed.2d 266 (1971), *quoting Samuels v. United States*, 398 F.2d 964, 968 (5th Cir. 1968), *cert. denied*, 393 U.S. 1021, 89 S.Ct. 630, 21 L.Ed.2d 566 (1969). The record does make clear he was commenting only upon the opening statement of defendant's attorney, and he continued to do so after the bench conference.

The other complaint is that the prosecutor told the jury that it "didn't hear" any testimony disputing certain parts of the government's case. The prosecutor prefaced this remark by stating that he was directing his comment to the defense witnesses. There were four defense witnesses. It is permissible for the prosecutor to compare the testimony of defense witnesses with the testimony of government witnesses to show that defense witnesses have not explained inconsistencies in the defendant's case. This is a plausible explanation for the prosecutor's comment. *United States v. Rochan*, 563 F.2d 1246, 1249 (5th Cir. 1977).

Finally, the district court included a proper instruction to the jury concerning the right of an accused not to testify and the presumption of innocence. We, therefore, find no plain error in the prosecutor's statements.

The district court is properly affirmed both on the issue of fair trial raised by objection to the comments of the prosecutor and on its denial of the motion for a new trial based upon newly discovered evidence.

AFFIRMED.